SWIFT & CO. v. NEW DURHAM LUMBER CO.

An action for rent, or for use and occupation, can only be maintained upon a promise, express or implied, to pay for the occupation; and an action for the value of slabs and edgings made at a saw-mill, and claimed as rent of the mill, cannot be maintained without a promise, express or implied, to pay for the use of the mill.

ASSUMPSIT, for 250 cords of slabs, butts, and edgings claimed by the plaintiffs as rent of a saw-mill. Facts found by a referee.

*T. J. Smith*, for the plaintiffs.

*Worcester & Gafney*, for the defendants.

CLARK, J.    July 1, 1879, McDuffee leased to the plaintiffs, by an instrument under seal, at an annual rent of $250 for the term of five years, the acid building, saw-mill, and a tenement-house at the Powder Mills in New Durham, and the plaintiffs leased the saw-mill to Holten for the same term by a lease under seal, reserving as an annual rent the sum of one dollar and all slabs and butts which might be made at the mill after July 1, 1880. September 7, 1882, McDuffee conveyed to the defendants all the real estate

owned by him in New Durham, including the leased premises subject to the lease, and the defendants notified the plaintiffs of the fact, and also notified them that they were aware that Holten was occupying the saw-mill and yard under some arrangement with the plaintiffs; to which they objected. Immediately after, Swift, one of the plaintiffs, and Holten went to New York and met the defendants at their office, and negotiations were entered into for the purchase of Holten's machinery in the saw-mill by the defendants. Holten stated his price, which the defendants thought excessive. One of the defendants asked Swift if the plaintiffs would relinquish any claim they had there, if any, if the defendants bought the property of Holten, and Swift replied that Holten wanted his money, and he was anxious for him to get it; and if the defendants would pay Holten the price he named, they, the plaintiffs, would relinquish all claims they had to the saw-mill. Thereupon the trade between the defendants and Holten was concluded, the defendants paying him, in money and a note afterwards paid, about $1,900; and the defendants entered into possession of the saw-mill, receiving from the plaintiffs' agent the key to the water-gates controlling the use of the water at the mill, and continued to occupy it until the expiration of the plaintiffs' lease,— manufacturing at times excelsior shooks and staves, from which resulted large quantities of waste, some of which was used for heating purposes, some was shipped in the cars, and some was used by the workmen about the mill. June 30, 1883, the plaintiffs notified the defendants that the rent of the saw-mill for the past year was due according to the Holten lease, and claiming the slabs and butts not disposed of, and an accounting for such as had been disposed of, and continued to urge their claim for the rental during the term of the lease. Prior to June 30, 1883, the defendants had no knowledge of the terms of the Holten lease, and no knowledge that any claim was to be made by the plaintiffs for the slabs and butts. The action is assumpsit for 250 cords of slabs, butts, and edgings disposed of by the defendants,—$250. The writ was amended by adding a count in trover for the same. The referee finds, that by reason of the declaration of Swift, the defendants as reasonable men were induced to purchase Holten's property, believing that it was free from every possible claim on the part of the plaintiffs; and having paid their money in good faith, that the plaintiffs are estopped from claiming the slabs, butts, and edgings, and that they cannot recover for the same; but if the court holds otherwise, the referee, under the amended declaration, finds the defendants guilty of converting to their own use one hundred cords of slabs, butts, and edgings, of the value of one hundred dollars.

Regardless of the question of estoppel, the action cannot be maintained. There was no contract, express or implied, on the part of the defendants to pay rent to the plaintiffs for the use of

the mill. They were not assignees of the Holten lease. They knew nothing of its terms, and it does not appear that they knew of its existence, until June 30, 1883. Until that time they had no knowledge that the plaintiffs intended to claim rent; and when the claim was made they refused to recognize the plaintiffs' claim of title, and continued to occupy in defiance of it. Upon these facts assumpsit cannot be maintained. *Water Co.* v. *Metcalf*, 63 N. H. 427; *Barron* v. *Marsh*, 63 N. H. 107. Neither can trover be maintained. There being no contract to pay rent, the plaintiffs show no title to the slabs, butts, and edgings.

*Judgment for the defendants.*

BINGHAM, J., did not sit: the others concurred.